IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY BROWN,         } | |
|         } | |
|     Plaintiff        } | |
| v.                   } | Case No.: 2:17-cv-01671-RDP |
|         } | |
| RAMADA BIRMINGHAM AIRPORT, } | |
| a/k/a BRITNEY CHAU LLC,    } | |
|         } | |
|     Defendant        } | |

**MEMORANDUM OPINION**

On October 6, 2020, the court conducted a jury trial to determine the damages suffered by Plaintiff Larry Brown ("Plaintiff" or "Brown"). The jury awarded Plaintiff $113,400 in compensatory damages and $472,500 in punitive damages. (Doc. # 27). The court requested Plaintiff brief the issue of whether the punitive award was constitutionally excessive. Because the court finds that the punitive damages awarded by the jury were not unconstitutionally excessive, the court upholds the punitive damages award.

**I.    Factual and Procedural Background**

Defendant Ramada Birmingham Airport, also known as Britney Chau LLC ("Defendant" or "Ramada Birmingham"), hired Brown, an African-American male, as a driver in November 2014. (Doc. # 1 at ¶¶ 4, 7). According to Brown, Tom Chau ("Chau"), owner of Ramada Birmingham, "engaged in a pattern and/or practice of discriminating against African-American employees in the terms and conditions of employment." (*Id.* at ¶ 11). On July 3, 2015, Chau ordered Brown to move three vehicles from the property which had been parked for thirty days. (*Id.* at ¶ 8). Chau had previously asked the other African-American driver employed by

Defendant to move the vehicles, but he had refused to do so.  (*Id.* at ¶ 10).  Chau did not ask the Caucasian driver employed by Defendant to move the vehicles.  (*Id.*).  Brown was subsequently arrested for grand theft auto for moving the cars.  (*Id.* at ¶ 9).  The charges were eventually dropped, and Brown asked Defendant to reimburse him for the costs he incurred from the arrest.  (*Id.*).  Defendant refused to do so.  (*Id.*).

On November 24, 2015, Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* at ¶ 12).  Chau called Brown into a meeting on December 28, 2015 and aggressively questioned Brown about the November 24, 2015 charge of discrimination.  (*Id.* at ¶ 13).  On January 13, 2016, a co-worker informed Brown that Chau and the General Manager of Ramada Birmingham were asking employees to make false allegations of misconduct against him.  (*Id.* at ¶ 14).  January 13, 2016 was a regularly scheduled off-day for Brown.  (*Id.*).  When Brown returned to work on January 14, 2016, Defendant informed Brown that he was being discharged for not attending work on January 13, 2016.  (*Id.* at ¶ 15).

On September 28, 2017, Brown filed this action against Defendant.  (Doc. # 1).  The complaint alleges race discrimination in violation of 42 U.S.C. § 1981 (Count I) and retaliation in violation of 42 U.S.C. § 1981 (Count II).  (*Id.*).  Defendant failed to respond to Brown's complaint, and, on January 22, 2018, the Clerk of Court issued an Entry of Default in favor of Brown. (Doc. # 9).  On March 8, 2018, the court found Defendant was liable to Plaintiff on both counts and set this matter for trial so that a jury could determine damages.  (Doc. # 12).

The court conducted a jury trial on October 6, 2020.  Defendant remained in default and did not make an appearance at the trial.  The jury awarded Brown $18,900 in lost wages and benefits, $94,500 in compensation for emotional pain and mental anguish, and $472,500 in

punitive damages. (Doc. # 27). After the jury issued its verdict, the court instructed Plaintiff's counsel to file a memorandum of law addressing the propriety of the punitive damages award. Plaintiff's counsel provided the court with that memorandum on October 18, 2020. (Doc. # 28-1).

## II. Analysis

Excessive and arbitrary punitive damage awards infringe on a defendant's due process rights. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Courts have "a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999).[1] In reviewing a punitive damages award under the Due Process Clause, the following guideposts must be considered: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Campbell*, 538 U.S. at 418 (citing guideposts set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Where, as here, the compensatory award is not an equitable remedy, "the Seventh Amendment 'requires that an order of remittitur be accompanied by an offer for a new trial.'" *Collins v. Koch Foods Inc.*, 454 F.Supp.3d 1174, 1187 n.11 (N.D. Ala. 2020) (quoting *Brown v. Alabama Dept. of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010)).

A court's dominant consideration when evaluating a punitive damages award is the first *Gore* guidepost, the reprehensibility of the defendant's conduct. *See Gore*, 517 U.S. at 575. And, in determining the level of reprehensibility at issue, a court must consider: "(1) whether the harm

---

[1] Reviewing punitive awards for excessiveness usually occurs after the defendant files a motion under Rule 59(a). *See, e.g.*, *Johansen*, 170 F.3d at 1331. However, the defendant in this case is in default and has not filed such a motion. Nevertheless, the court has undertaken to review the punitive award *sua sponte* under Rule 59(e).

caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1283 (11th Cir. 2008) (citing *EEOC v. W&O, Inc.*, 213 F.3d 600, 614-15 (11th Cir. 2000)).

Several factors suggest that Defendant's conduct was reprehensible and that the punitive damages award should be upheld. First, Brown suffered emotional and psychological harm after his termination. At trial, he testified to feeling depressed and receiving in-patient treatment for those feelings of depression. Our circuit has found similar emotional harms weigh in favor of finding conduct to be reprehensible under the non-economic harm factor. *See Goldsmith*, 513 F.3d at 1283 ("One factor that suggests that the misconduct of [Defendant] was reprehensible is that Goldsmith suffered both economic harm and emotional and psychological harm."). Second, Brown was financially vulnerable. As a result of losing his job, Brown lost his car and fell behind on his rent. Finally, Defendant engaged in trickery and deceit to justify terminating Brown. Defendant fired Brown for missing a day of work despite the fact that Brown was never scheduled to work the day he allegedly missed. (Doc. # 1 at ¶ 15). And, Defendant encouraged other employees to make false allegations of misconduct against Brown so that Defendant could use those allegations as a basis to terminate Brown. (*Id.* at ¶ 15). These types of pretextual justifications amount to "trickery[] or deceit" and thus weigh against reducing the punitive damages award. *Goldsmith*, F.3d at 1283 (citing *W&O, Inc.*, 213 F.3d at 614-15).

Nor does the second *Gore* guidepost weigh in favor of reducing the punitive damages awarded by the jury. In comparing punitive and compensatory damages, courts must consider

"the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." *Gore*, 517 U.S. at 581 (quoting *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460 (1993)). Although the Supreme Court has not provided "a simple mathematical formula, even one that compares actual and potential damages to the punitive award," the Court has decided that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Id.* at 582. The Court has warned that "few awards exceeding a single-digit ratio between punitive and compensatory damages … will satisfy due process." *State Farm*, 538 U.S. at 425.

The ratio between punitive and compensatory damages in this case is roughly 4.2 to 1. Recognizing the harm caused by workplace discrimination and retaliation, the Eleventh Circuit has upheld similar and often higher ratios between punitive and compensatory damages. *See, e.g.*, *Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003) (upholding punitive damages award that was between three and four times the compensatory award in a racial discrimination case); *Goldsmith*, 513 F.3d at 1284 (upholding punitive damages award that was 9.2 times the compensatory award in a racial discrimination and retaliation case). In light of these cases and the need to deter future misconduct by Defendant, the court finds the single-digit ratio in this case is not excessive.

The punitive damages award also does not differ greatly from the civil penalties imposed in other Title VII cases. As our circuit and other circuits have acknowledged, there are no comparable civil penalties in § 1981 cases. *See Goldsmith*, 513 F.3d at 1284-85. But, even if the punitive awards damages in this case were compared to the civil penalties imposed by the related

statute 42 U.S.C. § 1981a, the court would still not find any reason to revise the award.[2] The Eleventh Circuit has upheld punitive damages awards larger than the penalties imposed by § 1981a, which range from $50,000 to $300,000. *See, e.g.*, *Goldsmith*, 513 at 1284 (upholding punitive award of $500,000); *Bogle*, 332 F.3d at 1362 (upholding punitive award of $1,900,000). For these reasons, the court does not find the punitive damages award problematic under the third *Gore* guidepost, or based on other controlling legal principles.

## III.  Conclusion

Because all three *Gore* guideposts weigh against revising the punitive award, the court **DETERMINES** the jury award satisfies the constraints imposed by the Due Process Clause. An Order of Final Judgment will be entered separately.

**DONE** and **ORDERED** this October 29, 2020.

*/s/ R. David Proctor*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2] The record contains no information as to how many employees are employed by Defendant. Because § 1981a assigns different civil penalties based on the size of the defendant, a comparison to civil penalties in this case is particularly unhelpful.